Gwendolyn O. AUSTIN, Plaintiff–
Appellant,

v.

FORD MODELS, INC., a New York Corp.,
its chairpersons and officers, Marion T.
Smith, individually, John Doe, individu-
ally, and Jane Doe, individually, Defen-
dants–Appellees.

Docket No. 96–9707.

United States Court of Appeals,
Second Circuit.

Argued Nov. 24, 1997.

Decided July 16, 1998.

Gwendolyn O. Austin, Pro Se, Newark, New Jersey.

Mary C. Mone (Christopher H. Jones, Hollyer, Brady, Smith, Troxell, Barrett, Rockett, Hines & Mone, LLP, on the brief), New York City, for Defendant–Appellee.

Before: OAKES, WALKER, Circuit Judges, and BRIEANT, District Judge.*

JOHN M. WALKER, JR., Circuit Judge:

Gwendolyn O. Austin, *pro se*, appeals from the November 27, 1996 judgment of the United States District Court for the Southern District of New York (Kevin Thomas Duffy, *District Judge* ) (1) dismissing, pursuant to Fed.R.Civ.P. 12(b)(6), Austin's first amended complaint alleging employment discrimination on the basis of race and sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and employment discrimination on the basis of age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.;* (2) dismissing as abandoned Austin's claims of libel, slander, and "thwarting" of an Equal Employment Opportunity Commission ("EEOC") investigation; and (3) denying Austin's motion for leave to file a second amended complaint.

We hold that the district court erred in dismissing Austin's claim of race (but not sex and age) discrimination in the payment of overtime and her claims of race and age (but not sex) discrimination in the allocation of staffing assistance. In light of the above, we also vacate the dismissal of Austin's claims of discriminatory discharge on the basis of race and age (but not sex).

Accordingly, we affirm in part, vacate in part, and remand to the district court for further proceedings.

## Background

The following facts are culled exclusively from Austin's pleadings, interpreted in the light most favorable to Austin. In Septem-

---

ber 1987, defendant-appellee Ford Models, Inc. ("Ford"), a model agency, hired Austin, a black woman born in 1940, as a credit collection manager. Although Austin had no formal job description, her duties included verifying credit on new accounts, posting cash receipts, collecting outstanding balances, reconciling disputed accounts, mailing invoices, and handling bankruptcy claims. Austin was under the direct supervision of Michael Polesky, a white man who was Ford's Vice President and Treasurer.

In 1992, a dispute arose between Austin and her supervisors over Austin's work load and salary. In June 1992, Ford transferred Austin's assistant, who had worked exclusively for Austin, to another department. As a result, Austin alleges that she had to perform unnecessary clerical work involving extra hours without additional monetary compensation, while other, non-black, employees were receiving overtime pay for their extra work. When Austin made proposals to streamline her work and thereby reduce her working hours, Ford rejected them. Instead, Polesky offered Austin the choice between receiving a 15% pay raise or having an assistant but taking a pay reduction. Austin chose the raise. Austin alleges, however, that other employees, none of whom were black, had assistants but were not asked to take a reduction in salary. In December 1993, Ford gave Austin an additional five percent raise. From July 1992 to January 1994, despite Austin's continued protests over "clerical overload" and uncompensated overtime, her job functions remained essentially unchanged. Austin characterized what happened thereafter as follows:

> [i]n late January, 1994 I stopped working the extra hours, since I was not being compensated nor was I receiving any cooperation from management with respect to adjustments in my workload. As a result of Jerry Ford, Co–Chairman and Mr. Polesky's failure to make the necessary adjustments in my workload, the cash flow in the company suffered and a crisis developed. Consequently, top management became involved in making the collection calls. At this point I concluded that I was going to be scapegoated for the crisis in the department and management was going to get rid of me.

In May 1994, Ford terminated Austin.

In June 1994, Austin filed a timely charge of discrimination with the EEOC. She alleged race, sex, and age discrimination on the basis of the "unreasonable workload" she was given, the "extra hours" Ford forced her to work "without compensation," and her termination. In an affidavit filed with her EEOC complaint, Austin stated that most of her job responsibilities had been transferred to a 25 year-old white male, and that within a year and a half prior to her discharge, Ford had terminated three white female employees over 40 years of age, one of whom was replaced by a younger white man.

In July 1994, Ford issued a letter and supporting information to the EEOC responding to Austin's charges of discrimination. Ford claimed that Austin was an "at-will employee" who had been fired because she "stopped doing her job in a competent manner and the accounts receivable function substantially deteriorated." Ford also took the position that its "employees at Ms. Austin's level do not receive 'overtime' pay but are expected to perform their duties even if additional hours are sometimes required." Finally, Ford pointed out that it had 61 New York employees, of whom 45 were female, 16 were racial minorities (including three black employees), and 24 were over the age of 40.

In February 1995, the EEOC ruled that Ford had not violated either Title VII or the ADEA and concluded that Austin's discharge was "due, largely, to 'politics.'" Later in 1995, Austin brought this lawsuit naming Ford and various of Ford's top executives, including Co–President Marion T. Smith, as defendants. Austin attached several exhibits to her amended complaint, including the materials that she and Ford had submitted to the EEOC. The amended complaint alleged that defendants (1) violated Title VII; (2) violated the ADEA; (3) committed libel and slander by making false defamatory statements in response papers to the EEOC; and (4) "thwarted" the EEOC's investigation by deliberately "omi[tting] [ ] material facts" relevant to Austin's complaint in their response to the EEOC. As a result, Austin sought

reinstatement, compensatory and punitive damages, and other relief.

In July 1995, defendants moved to dismiss Austin's amended complaint on the basis, *inter alia,* that Austin could not state a claim for unlawful discrimination in her termination because her EEOC affidavit admitted that she had been terminated for poor performance. Austin cross-moved for leave to file a second amended complaint. The proposed complaint omitted Smith and the other individual defendants, did not include the EEOC affidavit with the critical admissions, and omitted the libel, slander, and "thwarting" causes of action. The proposed complaint did assert that Ford engaged in race, sex, and age discrimination in violation of Title VII and the ADEA by failing to provide Austin with overtime compensation, assigning her an unreasonable work load, and terminating her. Austin also sought to add a claim that Ford engaged in unlawful discriminatory practices in violation of section 296 of the New York Executive Law. *See* N.Y. Exec. Law § 296 (McKinney 1997).

The district court granted defendants' motion to dismiss and denied Austin's motion for leave to file a second amended complaint. *See Austin v. Ford Models, Inc.,* No. 95–CV–3731 (November 26, 1996). That court held that "a fair reading of [Austin's affidavit filed with her EEOC complaint] is that the corporation let Ms. Austin go for good and sufficient business reasons." The district court therefore dismissed all of Austin's Title VII and ADEA claims of discriminatory discharge. *Id.* at 2.

Addressing the proposed second amended complaint, the district court deemed Austin's libel and slander claims as well as her claim against Smith abandoned because they were not included. The district court did not address Austin's claims of discrimination in the allocation of overtime pay and staffing, nor the proposed second amended complaint's omission of either the other individual defendants or the "thwarting" cause of action. Finally, in light of its dismissal of all of Austin's federal claims, the district court declined to exercise supplemental jurisdiction over Austin's proposed claim under section 296 of the New York Executive Law. Austin now appeals.

*Discussion*

I. *Standard of Review*

In reviewing the district court's dismissal of Austin's complaint pursuant to Fed. R.Civ.P. 12(b)(6), we are "required to accept the material facts alleged in the complaint as true," and will vacate the dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Easton v. Sundram,* 947 F.2d 1011, 1014–1015 (2d Cir.1991) (quotation marks omitted). Our review is *de novo, see Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996), and we consider attachments to the pleadings as included therein. *See* Fed.R.Civ.P. 10(c); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991).

II. *Disparate Treatment in the Terms and Conditions of Austin's Employment*

Ford's allegedly discriminatory actions occurred after Austin turned forty, bringing her within the age category protected by the ADEA. *See Johnson v. Mayor of Baltimore,* 472 U.S. 353, 355, 105 S.Ct. 2717, 86 L.Ed.2d 286 (1985) (ADEA protects employees or employee applicants between ages of 40 and 70); 29 U.S.C. § 631(a) (ADEA protects individuals at least 40 years of age). This court uses the same framework to assess ADEA claims as it does to consider Title VII claims. *See Woroski v. Nashua Corp.,* 31 F.3d 105, 108 (2d Cir.1994). First, the plaintiff is required to establish a *prima facie* case consisting of four elements: (1) membership in a protected class/age group; (2) qualification for the position; (3) an adverse employment decision/discharge; and (4) that the decision/discharge took place under circumstances giving rise to an inference of discrimination. *See Woroski,* 31 F.3d at 108; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The requirements for establishing a *prima facie* case are "minimal." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Fisher v. Vassar College,* 114 F.3d 1332, 1335 (2d Cir.

1997) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). If the plaintiff makes this minimal showing, the burden shifts to the employer to articulate a legitimate, non-discriminatory purpose for its adverse employment action. *See Woroski,* 31 F.3d at 108; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. Any such stated purpose is sufficient to satisfy the defendant's burden of production; the employer does not have to persuade the court that the stated purpose was the actual reason for its decision. *See Fisher,* 114 F.3d at 1335–36. If the employer satisfies that burden, the plaintiff may still prevail, but "only if [the] employer's proffered reasons are shown to be a pretext for discrimination." *Id.* at 1339. To make this showing, the plaintiff must demonstrate "both that the [proffered] reason was false, and that discrimination was the real reason." *Hicks,* 509 U.S. at 515, 113 S.Ct. 2742; *Fisher,* 114 F.3d at 1339.

■ Title VII and the ADEA protect against discrimination with respect to the "terms" and "conditions" of employment. 42 U.S.C. § 2000e–2(a)(1); 29 U.S.C. § 623(a)(1). Austin's allegations that discrimination motivated Ford's denial to her of overtime pay and of additional staffing are cognizable under these statutes. *See, e.g., Annis v. County of Westchester,* 136 F.3d 239, 248 (2d Cir.1998) (discriminatory denial of overtime pay on basis of sex violates Title VII). Furthermore, contrary to Ford's assertions, Austin raised both of these discrimination claims before the EEOC as evidenced by Austin's charge of discrimination, her subsequent letters to the EEOC, and the EEOC's letter of determination. The latter expressly notes Austin's allegations that Ford discriminated against her on the basis of age, gender, and race "by giving her an unreasonable workload [and] forcing her to work extra hours without compensation." Thus, this court has subject-matter jurisdiction to evaluate Austin's claims. *Cf. Miller v. International Tel. and Tel. Corp.,* 755 F.2d 20, 23 (2d Cir.1985) ("No action based on a claim of age discrimination may be brought in federal court unless the claim was properly raised with the EEOC...."); *Criales v. American Airlines, Inc.,* 105 F.3d 93, 95 (2d Cir.1997) ("The prerequisites for a suit under

Title VII include a timely filed ... charge [to the EEOC] and timely institution of the suit after receipt of a right-to-sue notice."). Although the district court did not address Austin's claims of discrimination regarding overtime pay and staffing allocation, we review Austin's complaint *de novo* and evaluate the sufficiency of these claims under Fed. R.Civ.P. 12(b)(6).

### A. Overtime

■ Austin claims discrimination in the provision of overtime pay on the basis of race, sex, and age. As to race, Austin's complaint alleges (1) that she is a protected class member (i.e., black), (2) that she was qualified to receive overtime pay because she worked "extra hours" and other employees with equal or greater responsibility received overtime pay, (3) that Ford denied her overtime pay for overtime work performed, and (4) that none of the employees receiving overtime pay were black. Austin has therefore alleged a *prima facie* case of race discrimination with respect to overtime compensation. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 n. 6, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (qualified female employee denied promotion in favor of male employee established *prima facie* case of gender discrimination); *Hicks,* 509 U.S. at 506, 113 S.Ct. 2742 (setting forth minimal requirements of *prima facie* case). As the record now stands, and limiting our review to Austin's pleadings, dismissal of this claim was inappropriate.

Ford claims that Austin was not legally entitled to overtime pay because 29 C.F.R. § 541.205(c)(5), a Fair Labor Standards Act ("FLSA") regulation, lists "credit managers" such as Austin as examples of administrative employees who are exempt from federal minimum wage and overtime requirements. The question, however, is not whether Ford complied with the FLSA, but whether Ford discriminated against Austin in violation of Title VII. Austin's pleadings named four non-black employees (including supervisor Polesky) who she alleges had greater responsibilities and who, although apparently not entitled to overtime pay under the FLSA, nevertheless received it. Therefore Austin has alleged a

*prima facie* case of race discrimination in the provision of overtime compensation and the district court erred in dismissing this claim.

■ However, the district court did not err in dismissing Austin's claims of sex and age discrimination in the provision of overtime. She has failed to allege, and the record does not reflect, that overtime was paid only to employees younger than Austin. Also, by Austin's own admission, overtime was paid to other similarly situated female employees. Although Austin is not required to establish that overtime was denied only to women and to employees her age and older to establish *prima facie* cases in each category, she has failed to allege *any* other facts suggesting that Ford's denial of overtime pay to Austin occurred under "circumstances giving rise to an inference of [ ] discrimination" on the basis of sex or age. *See Woroski,* 31 F.3d at 108. Her complaint thus fails to allege an essential component of a *prima facie* case of age and sex discrimination with regard to overtime.

### B. *The Allocation of Additional Staffing*

■ Austin also alleges that, because of her sex, age, and race, Ford refused to hire any assistants to aid her even though Ford hired assistants for several of her co-workers. At the outset, Austin's *prima facie* case of sex discrimination in the allocation of staffing must fail. Because Austin admits that two other similarly situated women employees—Mona Feigenbaum and Annette Nieves—received additional staffing, and because she has alleged no other fact raising an inference of sex discrimination, Austin has not alleged "circumstances giving rise to an inference of [ ] discrimination" on the basis of sex. *See Woroski,* 31 F.3d at 108.

■ Austin's pleadings, however, do meet the minimal threshold of a *prima facie* case of age and race discrimination in staffing allocation. Austin alleges, for example, that the employees who received additional staffing were not black. Similarly, Austin alleges that both prior to and after her tenure with Ford, when "collection responsibilities [were] considerably less," at least *two* employees who were younger than Austin together assumed her job responsibilities.

Ford responds that Austin has admitted a sufficient business reason for Ford's refusal to provide Austin additional staffing: that in 1992 Austin negotiated a 15% salary increase in exchange for agreeing to handle the entire credit and collection function without assistance. Austin alleges, however, that in forcing her to choose between either receiving a 15% salary increase or receiving an assistant *and* a salary decrease, Ford imposed more onerous employment conditions upon Austin than upon other, white employees. She alleges that co-employees Mona Feigenbaum, Annette Nieves, Tim Dressler, and supervisor Polesky, none of whom are black, each received temporary and/or permanent assistants but were not required to receive a salary decrease. These allegations are sufficient to make out a *prima facie* case of race discrimination. Similarly, Austin's contention that two younger employees staffed her position prior to and after her tenure, despite Ford's insistence during Austin's tenure that the position be handled by one person alone, raises the minimal inference of age discrimination necessary to establish Austin's *prima facie* case.

### III. *Discriminatory Discharge Claims*

■ Ford argues that Austin is precluded from establishing a *prima facie* case by her own pleadings. Because Austin alleged in her pleadings that she refused to work extra hours and thereby helped to cause a cash flow crisis at Ford, Ford claims, she admitted that she was not "qualified" for the position from which she was discharged. Ford also maintains that, whether or not Austin has established a *prima facie* case, "Austin's admissions doom her quest for discrimination damages because they show that Ford Models fired her for good reason[s]" that "were not pretextual."

Austin's pleadings admitted that she stopped working "extra hours" in January 1994 and that as a result of Ford's "failure to make the necessary adjustments in [her] workload, the cash flow in the company suffered and a crisis developed." Austin also acknowledged that, as early as September 1993, her supervisors had "continuous com-

plaints" about the pace at which she was performing her job. In many cases, such admissions by a plaintiff would be sufficient to establish that an employer fired an employee for a legitimate, non-pretextual, non-discriminatory reason. However, in the context of Austin's allegations of discrimination as to overtime and staffing allocation, her statement that she refused to work "extra" or overtime hours without pay can be construed as a refusal to comply with working conditions of employment prohibited by Title VII and the ADEA. If indeed Ford denied Austin overtime pay because of her race and denied Austin equal staffing assistance because of her race and age, then it would plainly be discrimination for Ford to fire Austin for refusing to work unpaid overtime hours without an assistant. Thus, we vacate the district court's dismissal of Austin's race and age discriminatory discharge claims.

## IV. *Austin's Motion for Leave to Amend*

The district court denied Austin's motion for leave to file a second amended complaint, which omitted the admissions in the first amended complaint, on the basis that Austin could not by these omissions "erase[ ]" the admissions in her first amended complaint. We agree.

A district court's decision to deny a motion to amend a complaint is reviewed for abuse of discretion. *See Azurite Corp. v. Amster & Co.*, 52 F.3d 15, 19 (2d Cir.1995). "The amendment of a pleading does not make it any the less an admission of the party." *Andrews v. Metro N. Commuter R.R.*, 882 F.2d 705, 707 (2d Cir.1989). Therefore, Austin cannot benefit from amending her complaint to omit these admissions.

## V. *Austin's Remaining Claims*

Although Austin's first amended complaint alleged claims of libel, slander, and "thwarting" of the EEOC investigation, she omitted these claims from her proposed second amended complaint. The district court concluded that Austin had therefore abandoned these claims.[1] Similarly, the district court concluded that Austin had dropped her case against Smith because that defendant was not named in the proposed second amended complaint.[2]

The district court's dismissal raises the seemingly novel issue of whether, by requesting leave to file an amended complaint that omits earlier alleged claims and/or defendants, a *pro se* plaintiff is deemed to have abandoned the omitted claims as well as all claims against the omitted defendants. Although "an amended complaint ordinarily supersedes the original, and renders it of no legal effect," *see Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994) (quotation marks omitted), and "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived," *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir.1986), the amended complaint here was proffered but disallowed by the district court.

Ultimately, the question of abandonment is one of intent; ordinarily it makes perfect sense to hold that a party who seeks to file an amended pleading that omits a claim intends to abandon the claim, irrespective of whether the amended pleading is permitted by the court. Where the party is proceeding *pro se*, the question is less easily resolved. A *pro se* party may not fully understand the superseding effect of the second pleading, even when it is allowed much less when it is disallowed. Moreover, there is an element of unfairness in the adverse party's benefitting from the terms of a pleading that it has successfully opposed. Finally, because "[a] pro se plaintiff who brings a civil rights action should be fairly freely afforded an opportunity to amend [her] complaint," *Frazier v. Coughlin*, 850 F.2d 129, 130 (2d Cir. 1988) (quotation marks omitted), the *pro se*

---

1. Although the district court specifically deemed abandoned only Austin's libel and slander claims and not her "thwarting" claim, the same logic applies to all three claims.

2. Again, the district court's logic applies to the other individual defendants named in the first amended complaint but omitted from the second amended complaint, even though the district court did not specifically discuss the abandonment of claims against those defendants.

plaintiff would normally be allowed to reallege claims omitted from the second pleading once she had been informed that the effect of that pleading was to abandon those claims.

There is no need to decide this issue, however, because in her reply brief Austin concedes that she "opted to sacrifice" (i.e., abandon) her libel and slander claims and apparently her "thwarting" claim by omitting them from her proposed second amended complaint. Austin has not asserted any of these claims in her main brief on appeal; nor has she appealed from the district court's dismissal of her action as against the individual defendants omitted from her proposed second amended complaint. *See* Fed. R.App. P. 28(a)(6) (the appellant's brief "must contain the contentions of the appellant on the issues presented"); *LoSacco v. City of Middletown,* 71 F.3d 88, 92 (2d Cir. 1995) (although not "generally" held "rigidly to the formal briefing standards set forth in Fed. R.App. P. 28," *pro se* appellants can be deemed to have abandoned issues they fail to raise before this court). Therefore, these omitted claims, as well as all claims alleged against the omitted defendants, have been abandoned. In sum, we affirm the district court's dismissal of Austin's libel, slander, and "thwarting" claims and the dismissal of the entire action as against the individual defendants not included in Austin's proposed second amended complaint.

When the district court dismissed all of Austin's federal claims and determined that it was without jurisdiction to consider any remaining state claims, it declined to permit Austin to amend her complaint to add a claim under section 296 of the New York Executive Law. In light of our decision to vacate and remand some, but not all, of Austin's federal claims, the district court must reconsider whether to permit Austin to amend her complaint to add the claim under section 296 of the New York Executive Law. Finally, we express no opinion as to any possible disposition of a future motion brought pursuant to Fed. R. Civ. P. 56.

### Conclusion

The district court's dismissal of Austin's claims of (1) Title VII sex discrimination and ADEA age discrimination with respect to the payment of overtime, (2) Title VII sex discrimination with respect to the allocation of staffing, (3) Title VII sex discrimination with respect to Austin's discharge, (4) libel, slander, and "thwarting" claims, and the entire action against all of the defendants except Ford, is affirmed. The district court's denial of Austin's motion to file a second amended complaint is affirmed. The district court's judgment, insofar as it dismissed Austin's claims of (1) discriminatory discharge on the basis of race and age under Title VII and the ADEA, (2) race discrimination in the payment of overtime, and (3) race and age discrimination in the allocation of additional staffing, is vacated and remanded for further proceedings. The district court is directed to reconsider whether Austin should be granted leave to file a second amended complaint adding a claim under section 296 of the New York Executive Law. Finally, the district court may consider whether Austin should be appointed counsel on remand. Each party shall bear its own costs.