**Kathleen M. CIFRA, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY and Lockheed Martin Corporation, as its successor, Defendants.**

**No. 96–CV–615 (NPM).**

United States District Court, N.D. New York.

Aug. 26, 1999.

---

Mark David Blum and Associates, Mark David Blum, of counsel, Fayetteville, NY, for plaintiff.

Bond, Schoeneck & King, LLP, Larry P. Malfitano, Gretchen White, of counsel, Syracuse, NY, for defendants.

Lockheed Martin Ocean, Radar & Sensor Systems, Sandra Lee Fenske, of counsel, Syracuse, NY, for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

From August 2 through August 5, 1999, the court conducted a bench trial in this action. Plaintiff Kathleen M. Cifra brought suit pursuant to 42 U.S.C. § 2000e et seq., claiming that her supervisor, Kenneth Meashey ("Meashey"), subjected her to adverse and discriminatory working conditions on account of her gender, which ultimately resulted in her termination. At the end of plaintiff's case, defendants moved pursuant to Rule 52(c) of the Federal Rules of Civil Procedure for judgment as a matter of law.[1] The court reserved on that motion. At the end of all the proof, defendants renewed their motion and the court once again reserved decision. The court now denies defendants' Rule 52(c) motions. For the reasons set forth below, the court finds in favor of defendants and dismisses plaintiff's complaint. Based upon the evidence presented at trial with respect to the relevant issues in this matter, the following constitutes the court's findings of fact and conclusions of law as required by Rule 52(a).

## BACKGROUND

In 1986, plaintiff was hired by General Electric Company ("GE") as an industrial hygienist. She was responsible for recognizing, evaluating and controlling environmental, health and safety hazards to employees. She was primarily responsible for the industrial hygiene program at GE's three sites in Syracuse, New York, which encompassed at least twenty buildings. Her performance evaluations were good. Consequently, plaintiff received a promotion to senior industrial hygienist in 1987.

Sometime in 1990, GE's upper corporate management became concerned with its poor record of compliance on environmen-

---

1. A review of the pertinent portion of the transcript reveals that defense counsel errantly moved for judgment at the close of plain- tiff's case under Rule 56(c). The court presumes counsel intended to move under Rule 52(c).

tal, health and safety matters, in part to avoid criminal liability. At least two compliance audits were conducted at GE's Syracuse facilities. These audits revealed severe problems. Meashey, a GE employee, participated in one of the audits, and eventually became head of the Environmental, Health and Safety department ("EHS") for the Syracuse facilities. As head of EHS, Meashey was plaintiff's direct supervisor. Meashey was tasked with getting the Syracuse facilities into compliance with applicable regulations.

Unlike plaintiff, Meashey did not have a formal educational background in environmental, health and safety issues. Rather, he held undergraduate and graduate degrees in management, and had served as a law enforcement and counter-intelligence officer in the U.S. Air Force.

Aside from his lack of formal education in environmental, health and safety matters, Meashey had a different leadership style than his predecessor. Many employees, including plaintiff, did not respond well to him. Credible testimony from several witnesses established that Meashey could be verbally intimidating, disrespectful and demeaning. Much of this behavior, though directed at all employees, was particularly trained on plaintiff. This may have been the result of an early gaffe by plaintiff, when she questioned Meashey's qualifications to lead the EHS department.

While it is undisputed by the parties that plaintiff had excellent technical skills, Meashey required plaintiff and other EHS employees to take responsibility and "ownership" roles over projects they were involved in. He emphasized time and time again that he wanted plaintiff and others under his direction and control to not only identify the environmental problems in the Syracuse General Electric facilities, but once identification had been made to devise a correctional plan and then to assume responsibility for implementing the same. Plaintiff, however, viewed her role as confined to her expertise in environmental analysis and recommendations as to cor-

rective action to be taken, leaving implementation up to others in the chain of command. These different views of plaintiff's employment requirements were apparently never resolved between Meashey and plaintiff.

Meashey soon started documenting plaintiff's performance problems, which may have sprung, in part, from their differing views as to her job requirements. In September, 1990, Meashey first wrote her up. See Pl.'s Ex. 8. Plaintiff was warned that she was "close" to being put on a performance improvement plan, which would require her to quickly improve, or be terminated. Plaintiff responded to Meashey in writing, disputing the appraisal point-by-point. See Def.Ex. 32. Meashey had never received a written rebuttal from a dissatisfied employee before. Plaintiff was again written up for poor performance in January, 1991. See Def. Ex. 42. She was then written up in February, 1991, and placed on a performance improvement plan. See Def.Exs. 46 and 47. Plaintiff again disputed the performance appraisal in writing. See Pl.'s Ex. 48. At no point did plaintiff ever admit to having a performance problem, or for that matter, conform to Meashey's expectations. Plaintiff was terminated on June 5, 1991. See Pl.'s Ex. 78. Another female was hired to replace her.

## DISCUSSION

The *McDonnell Douglas* three part test applies to gender discrimination claims under Title VII. See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, plaintiff is required to establish a prima facie case. See *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152 (2d Cir.1998). If plaintiff makes this showing, the burden shifts to the employer to provide "a legitimate, non-discriminatory purpose for its adverse employment action." *Id.* at 153. "Any such stated purpose is sufficient to satisfy the defendant's burden of production; the employer does not have to persuade the

court that the stated purpose was the actual reason for its decision." *Id.* Plaintiff is then required to show that the employer's proffered reasons are a pretext for discrimination. *See id.*

## A. PRIMA FACIE CASE

■ A prima facie case of gender discrimination under Title VII consists of four elements: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment decision or termination; and (4) that the discharge or adverse decision took place under circumstances giving rise to an inference of discrimination.[2] *See Austin,* 149 F.3d at 152; *Shumway v. United Parcel Serv., Inc.,* 118 F.3d 60, 63 (2d Cir.1997); *Luciano v. Olsten Corp.,* 110 F.3d 210, 215 (2d Cir.1997); *McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997); *Fitzgerald v. Henderson,* 36 F.Supp.2d 490, 503 (N.D.N.Y.1998); *Cleveland v. Int'l Paper Co.,* 1998 WL 690915, at *3 (N.D.N.Y. 1998); *Passonno v. State Univ. of New York at Albany,* 889 F.Supp. 602, 606 (N.D.N.Y.1995); and *Harker v. Utica College of Syracuse Univ.,* 885 F.Supp. 378, 387 (N.D.N.Y.1995).

■ While it is a close question, the court finds that plaintiff made out a prima facie case. Plaintiff testified that she was treated differently than her male co-workers, not allowed to attend a certification test and training courses, targeted for termination, exposed to hostile attitudes of her male colleagues, and not given the same support as male co-workers to get jobs done. Anthony Maiurino, though equivocating, testified that Meashey was particularly tough on plaintiff, and forced him to "mentor" plaintiff. Mary Delay broadly accused Meashey of targeting plaintiff and other females, and testified that Meashey questioned females to a higher degree. Frank Collis testified that plaintiff was the focus of much more intense treatment by Meashey than other employees. He also testified that both he and plaintiff received identical poor ratings, and were placed on nearly identical performance improvement plans, though plaintiff was fired and he was not. While the vast majority of this evidence failed to show that plaintiff was treated differently *because she was a woman,* the evidence, taken together, allowed plaintiff to narrowly make out a prima facie case. It should be noted, however, that "[t]he fact that a plaintiff is judged to have satisfied these minimal requirements is no indication that, at the end of the case, plaintiff will have enough evidence of discrimination to support a verdict in h[er] favor." *Fisher,* 114 F.3d at 1337.

## B. ARTICULATION OF LEGITIMATE, NON-DISCRIMINATORY REASON FOR PLAINTIFF'S TERMINATION

■ As the court concludes that plaintiff has established a prima facie case, the

---

**2.** This court is well aware of defendants' argument that this fourth element of the prima facie case has been alternatively construed as "[4] the ultimate filling of the position by a person not of the protected class." *Fisher v. Vassar College,* 114 F.3d 1332, 1335 (2d Cir. 1997) (en banc), *cert. denied,* —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998). *Accord de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Servs.,* 82 F.3d 16, 20 (2d Cir.1996); *Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1239 (2d Cir. 1995); *Brooks v. Fonda–Fultonville Cent. Sch. Dist.,* 938 F.Supp. 1094, 1101 (N.D.N.Y. 1996). In this case, of course, plaintiff would be unable to make out a prima facie case if this alternate fourth element were used, as a female replaced her. The court declines, however, to use this element. First, the most recent Circuit cases have used the fourth element this court relies on. *See Austin,* 149 F.3d at 152; *Shumway,* 118 F.3d at 63. More importantly, in the original case establishing the burden-shifting analysis, the Supreme Court stated that "[t]he facts necessarily will vary in Title VII cases, *and the specification . . . of the prima facie proof required from [plaintiff] is not necessarily applicable in every respect to differing factual situations."* *McDonnell Douglas,* 411 U.S. at 802 n. 14, 93 S.Ct. 1817 (emphasis supplied). By this language, the Supreme Court intended the lower courts to be flexible in determining what prima facie elements should be utilized, and in this case, the court declines to rigidly apply one of the elements defendants suggest.

burden shifted to defendants to articulate a legitimate, non-discriminatory reason for plaintiff's termination. *See Austin,* 149 F.3d at 153; *Fisher,* 114 F.3d at 1335–36. Defendants presented evidence that plaintiff was fired because she either would not, or could not, adjust the level of her responsibility and performance to the expectations of her new supervisor after repeated warnings to do so. Poor work performance is a legal, non-discriminatory reason for terminating an employee; defendants have therefore met this burden. *See Austin,* 149 F.3d at 153; *Fisher,* 114 F.3d at 1336.

## C. PRETEXT FOR DISCRIMINATION

Once defendants offer a legitimate, non-discriminatory reason for the discharge, plaintiff has the final burden of showing that the termination occurred because of a discriminatory motive. *See Austin,* 149 F.3d at 153; *Fisher,* 114 F.3d at 1336. Plaintiff "must put forth adequate evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the employee's sex [ ] was the real reason for the discharge." *Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 129 (2d Cir.1996), *cert. denied,* 520 U.S. 1228, 117 S.Ct. 1819, 137 L.Ed.2d 1027 (1997). *See also Austin,* 149 F.3d at 153; *Fisher,* 114 F.3d at 1339.

■ Plaintiff failed to meet her burden in this regard. The vast majority of the evidence put forth by plaintiff demonstrated that she was treated differently than both her male and female colleagues. Noticeably lacking from this showing was evidence demonstrating that plaintiff was treated differently *because of her gender.* Rather, the court finds that although Meashey on many occasions treated plain-

tiff differently than her co-workers, he ultimately singled her out for termination because of her resistance to taking over the leadership or "ownership" role he was requiring of all employees in her category. Even if plaintiff's performance was equal to other poor performers, unlike the other employees, she challenged Meashey's authority and appraisals on multiple occasions, and refused to accept that she might have a performance problem. The question is not whether Meashey's appraisals of plaintiff's performance were correct, or even fair. "This court does not sit as a super-personnel department that reexamines an entity's business decisions" in the absence of discriminatory motivations. *Scaria v. Rubin,* 117 F.3d 652, 655 (2d Cir.1997) (quoting *Dale v. Chicago Tribune Co.,* 797 F.2d 458, 464 (7th Cir.1986)). Rather, the ultimate issue before the court is whether Meashey gave plaintiff poor performance appraisals and ultimately had her terminated *because of her gender.*[3]

There was a complete paucity of evidence in this regard. The only evidence plaintiff submitted showing she was discriminated against because of her gender were her own bald assertions, and those of her coworker, Delay. Both women claimed that Meashey treated females and plaintiff differently than other male employees. Both in their direct and cross examinations, however, neither witness was able to specify how women were treated differently. As Delay herself admitted, she had no performance problems with Meashey. This admission casts significant doubt on her adamance that women were treated differently by Meashey. The fact that Delay and other women who worked for Meashey were not given poor performance reviews or fired is solid evidence that plaintiff was ultimately terminated for

---

**3.** As the Circuit recently noted, even if Meashey's poor performance evaluations of plaintiff were entirely false, this does not necessarily indicate sexual discrimination. "[D]iscrimination does not lurk behind every inaccurate statement. Individual decision-makers may intentionally dissemble in order to hide a rea-

son that is non-discriminatory but unbecoming or small-minded, such as back-scratching, log-rolling, horse-trading, institutional politics, envy, nepotism, *spite or personal hostility." Fisher,* 114 F.3d at 1337 (emphasis supplied).

reasons other than her gender. In fact, there was ample evidence that Meashey was acting in a non-discriminatory manner when he sought out and procured a replacement for plaintiff by a female, and when he retained all of plaintiff's female co-workers—and plaintiff—upon assuming his new position as head of EHS. Consequently, the court finds that plaintiff failed to meet her burden of showing that her treatment and discharge were the result of a discriminatory motive. As such, her Title VII claim necessarily fails.

This is not to say the court does not sympathize with plaintiff. Various witnesses testified that Meashey was a difficult supervisor to work for, and ultimately, the evidence revealed that a great number of plaintiff's male co-workers resigned, rather than continuing to work under Meashey's harsh and aggressive supervision, and face possible termination. It may very well be that plaintiff was subjected by Meashey to worse behavior than her co-workers, but subjecting her to such questionable treatment was not, in and of itself, a violation of federal law, without a showing that this behavior was motivated by an impermissible animus, such as gender.

## CONCLUSION

Having failed to prove that the legitimate, non-discriminatory reason set forth by defendants was a pretext for sexual discrimination and discharge, the court determines that plaintiff has not prevailed in this matter. Accordingly, the court dismisses plaintiff's action, and instructs the Clerk of the Court to enter judgment in accordance herewith.

IT IS SO ORDERED.