**Laurel MULLIN, Plaintiff,**

v.

**ROCHESTER MANPOWER, INC.; Manpower, Inc.; and Maryann Dee, Defendants.**

**No. 00–CV–6257 CJS (B).**

United States District Court,
W.D. New York.

March 7, 2002.

Laurence E. Pappas, Pappas and Pappas, Rochester, NY, for plaintiff.

Matthew J. Fusco, Chamberlain, D'Amanda, Oppenheimer & Greenfield, Rochester, NY, for defendants.

## DECISION AND ORDER

SIRAGUSA, District Judge.

Plaintiff raises claims under the Civil Rights Act of 1964, Title VII, the Family & Medical Leave Act and the New York State Human Rights law. Previously, on January 17, 2002, this Court entered a decision and order granting plaintiff's application to amend her complaint. The case is now before the Court on defendants' motion for summary judgment (docket # 19) seeking dismissal of the Amended Complaint. For the reasons stated below, defendants' motion is granted in part and denied in part.

## FACTUAL BACKGROUND[1]

Rochester Manpower, Inc., is a domestic corporation with its principal place of business in Fairport, New York. Manpower, Inc., is a foreign corporation not autho-

---

1. The Court, of course, must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *See* Summary Judgment Standard, *infra.*

rized to conduct business in the state of New York and has its principal place of business in Milwaukee, Wisconsin. Maryann Dee is an employee of Rochester Manpower, Inc., and was one of plaintiff's supervisors at or near the time of plaintiff's termination.

Plaintiff was employed by Rochester Manpower, Inc., from November 15, 1995, until June 8, 1999. Robert Capo was the manager of the Fairport[2] branch of Rochester Manpower, Inc., from approximately December 1998 through January 2001 and was also one of plaintiff's supervisors at or near the time of her termination.

In 1997, plaintiff had a child and took a six-week maternity leave from her employment. Plaintiff was not required to submit a written request to take maternity leave. Mullin dep. at 55. At that time, she was a "Service Representative" at the Fairport branch. In January 1998, upon her return to work following her maternity leave, Rochester Manpower, Inc., agreed to adjust her work schedule to allow her more time with her newborn. This accommodation in her working hours was granted by her then supervisor, Giannina Naylon, who cleared it with Maryann Dee. Mullin dep. at 57–59. Approximately in June 1998, plaintiff was promoted to the position of "branch supervisor" at the Fairport office. On or about August 1, 1998, plaintiff's annual salary was increased from $27,875.00 to $30,000.00.

On about May 19, 1999, plaintiff confidentially informed her supervisor, Capo, that she was pregnant. In that regard, she testified in her deposition as follows:

> I did tell him that I just learned, I believe that day I had gotten off the phone with my doctor's office and I just learned that I was pregnant. I knew that, you know, we'd have to have a plan in place. he had been talking about Debbie Delaney who was a part-time interviewer, perhaps bringing her upon in the fall as a service representative. And I said, you know, maybe if that was—I said with me being pregnant that might be a good time to train, get her up and running, et cetera. I said I know that there would be a lot of plans that would need to be made so I wanted to let him know right away. And I asked him not to say anything, as I had miscarried before my daughter was born. So I said, "A lot of things can happen to first trimester. Can we please just keep it between us but keep it in mind, as we'll have to have a plan in place for the rest of the year."

Mullin dep. at 99. Capo asked her when she was due, and she responded that she was only about five weeks along and her due date would not be until January. Mullin dep. at 100.

On or about June 7, 1999, Capo asked plaintiff what her commitment was to the office and stated to her that he needed a "what ever-it-takes attitude" from her and, further, needed to know if she was "with him." Mullin affidavit at 2. The following day, Capo informed plaintiff she was being terminated for financial reasons. Mullin affidavit at 2. The day after that, Capo informed plaintiff she was being terminated for both financial and performance reasons. Then, two days later, on June 11, 1999, Dee told her she was being terminated for financial, not performance-related, reasons. Mullin affidavit at 2. However, in

---

**2.** The parties refer to the Fairport branch and the Perinton branch. They appear to be references to the same branch and the Court will take judicial notice, *sue sponte,* that the Village of Fairport is wholly within the Town of Perinton, though they are separate legal entities and that the Town of Perinton does not have a U.S. Post Office, whereas the Village of Fairport does; thus, many addresses for locations in the Town of Perinton have a Fairport, New York mailing address.

a July 26, 1999, letter from defense counsel to plaintiff's counsel, it was represented that after reviewing plaintiff's work history and discussing the matter with the president of Rochester Manpower, Inc., Robert G. Lewis, the plaintiff was being terminated for both financial and performance reasons. *Id.* On Sept. 21, 1999, defendants reported to the Equal Employment Opportunity Commission that plaintiff's work performance was questionable, and she was being terminated for financial reasons. *Id.* Mullin affidavit at 3. Yet, in a deposition on May 1, 2001, Capo described plaintiff as a "good worker." Capo dep. at 83.

Steve Schiano, the Controller or Chief Financial Officer of Rochester Manpower, Inc. since May 1995, in an affidavit submitted in support of defendants' application for summary stated,

> [a]s a result of poor performance *in the second quarter* and the fact that staff expenses remained well above the benchmark, I recommended that staff be cut at the Fairport branch in order to improve the financial condition of the branch. I made this recommendation at a meeting with Lewis, Robert Capo ..., and Dee at some point during the second quarter of 1999.

Schiano aff. at 2–3 (emphasis). There is no dispute that the second quarter was not complete until the *end* of June 1999.

## DISCUSSION

### *Summary Judgment Standard*

The law on summary judgment is well settled. Summary judgment may only be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine

issue of material fact. *See Amaker v. Foley*, 274 F.3d 677, 680 (2d Cir.2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the "evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met its initial obligation, the opposing party must produce evidentiary proof in admissible form sufficient to raise a material question of fact to defeat a motion for summary judgment, or in the alternative, demonstrate an acceptable excuse for its failure to meet this requirement. *Duplantis v. Shell Off-Shore, Inc.*, 948 F.2d 187 (5th Cir.1991); Fed.R.Civ.P. 56(f). Mere conclusions or unsubstantiated allegations or assertions on the part of the opposing party are insufficient to defeat a motion for summary judgment. *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir.1986). The Court, of course, must examine the facts in the light most favorable to the party opposing summary judgment, according the non-moving party every inference which may be drawn from the facts presented. *See Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir.1990). However, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir.1996). It is equally well settled that in diversity actions federal court sits and op-

erates as if it were " 'only another court of the state,' " and must apply state substantiative law. *GTFM, LLC v. TKN Sales, Inc.*, 257 F.3d 235, 241 (2d Cir.2001) (quoting Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)).

### Defendants' Motion Regarding Manpower, Inc.

Plaintiff's Amended Complaint contains seven causes of action. Of those, three are against defendant Manpower, Inc. In her memorandum of law (docket # 26), at 30, plaintiff concedes that Manpower, Inc., cannot be vicariously liable for actions taken by Rochester Manpower, Inc. Thus, plaintiff does not oppose defendants' motion for summary judgment relative to the claims against Manpower, Inc. Therefore, the Court dismisses the causes of action against Manpower, Inc., which are the second, fourth and seventh causes of action.

### Family and Medical Leave Act, Title VII, Pregnancy Discrimination Act & New York Human Rights Law

Title 29 U.S.Code § 2612(a)(1) entitles an eligible employee to a total of twelve workweeks of leave during any twelve month period for the birth of a son or daughter, or in order to care for a son or a daughter. The term "eligible employee" is defined in § 2611(2)(A) as an employee who has been employed for at least twelve months by the employer with respect to whom leave is requested under § 2612 and for at least one thousand two hundred fifty hours of service with such employer during the previous twelve month period. In her amended complaint, plaintiff adds sufficient factual allegations to prove that she was an eligible employee. *See* Amended Complaint at ¶¶ 12 – 13. In addition, the statute also defines the term "employer" under § 2611(4) as any person engaged in commerce or in any industry or activity affecting commerce who employs fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. Again, in her proposed amended complaint, plaintiff alleges facts sufficient to show that Rochester Manpower, Inc. qualifies as an employer under 29 U.S.Code § 2611.

Plaintiff also asserts a claim under Title VII of the Civil Rights Act of 1964, codified in 42 U.S.Code § 2000e *et seq.*, and the Pregnancy Discrimination Act. Title 42 U.S.Code § 2000e–2(a), states in pertinent part,

> It shall be an unlawful employment practice for an employer—to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . .

The definitional section of that statute, 42 U.S.Code § 2000e(k), states that the terms "because of sex" or "on the basis of sex" include,

> but are not limited to, because of or on the basis of pregnancy, child birth, or related medical conditions; and woman affected by pregnancy, child birth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, an nothing in § 2000e–II(h) of this Title shall be interpreted to permit otherwise . . . .

■ Finally, plaintiff makes a claim under the New York State Human Rights Law, codified at New York Executive Law § 296. That statute makes it an unlawful discriminatory practice

> for an employer or licensing agency, because of the age, race, creed, color, na-

tional origin, sex, disability, genetic predisposition or carrier status, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

N.Y.EXEC.LAW § 296(1)(A). That statute also makes it an unlawful employment practice, "for an employer to compel an employee who is pregnant to take a leave of absence, unless the employee is prevented by such pregnancy from performing the activities involved in the job or occupation in a reasonable manner." N.Y.EXEC.LAW § 296(1)(g). The Court notes that the elements of Title VII and New York Discrimination Law claims are virtually identical. *See, Clark v. New York State Electric and Gas Corp.,* 67 F.Supp.2d 63 (N.D.N.Y. 1999).

### McDonnell Douglas Standard

Discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and under the Pregnancy Discrimination Act, as well as pregnancy discrimination claims under New York's Human Rights Law are governed by the three-part analytical framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Flores v. Buy Buy Baby, Inc.,* 118 F.Supp.2d 425, 430 (S.D.N.Y.2000) (applying *McDonnell Douglas* to a PDA claim); *Klausner v. Industrial Risk Insurers, Inc.,* 1999 WL 476285, at *3 (S.D.N.Y. July 8, 1999) (applying *McDonnell Douglas* to N.Y. Human Rights Law claim). Under the *McDonnell Douglas* standard, a plaintiff bears the burden of proof and must ultimately establish, by a preponderance of the evidence, (1) membership in a protected group; (2) qualification for a position; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *See Shumway v. United Parcel Service, Inc.,* 118 F.3d 60, 63 (2d Cir.1997). To establish that the adverse employment action occurred under circumstances giving rise to an inference of discrimination, a plaintiff may demonstrate that "similarly situated" employees who do not share the plaintiff's protected characteristics were treated preferentially. *Id.*

Requirements for establishing a *prima facie* case are minimal. *See Austin v. Ford Models, Inc.,* 149 F.3d 148, 152 (2d Cir.1998). If a plaintiff is successful in demonstrating her *prima facie* case, then the burden shifts to his employer to articulate a legitimate, non-discriminatory purpose for its adverse employment action. *Id.* at 153 (citing *McDonnell Douglas, Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). The Second Circuit has held that "[a]ny such stated purpose is sufficient to satisfy the defendant's burden of production; the employer does not have to persuade the court that the stated purpose was the actual reason for its decision." *Austin v. Ford Models, Inc.,* 149 F.3d at 153.

Once the employer satisfies its burden, a plaintiff may prevail only if she presents evidence that the employer's proffered reasons are a pretext for discrimination. *Id.* A plaintiff, to demonstrate pretext, must show both that the proffered reason was false and that discrimination was the real reason. *Id.* In applying the *McDonnell Douglas* criteria to a case under the Age Discrimination in Employment Act, the Supreme Court has held that a plaintiff's *prima facie* case, combined with sufficient evidence for a reasonable fact finder to reject the employer's nondiscriminatory explanation for its decision, may be adequate to sustain a finding of liability for intentional discrimination. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530

U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Justice O'Connor, writing for a unanimous Court, said, "[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Id.; see also Regional Economic Community Action Program, Inc. v. City of Middletown Planning Bd.,* 281 F.3d 333, 347 (2d Cir.2002).

### Defendant's Motion to Dismiss the Family and Medical Leave Act Claims

■ Defendants' brief in support of their motion for summary judgment ("Defendants' Brief") asserts that plaintiff has not submitted sufficient evidence to establish that she requested a leave of absence under the Family and Medical Leave Act ("FMLA"). They cited to 29 C.F.R. section 825.302(c) which provides in pertinent part:

> [a]n employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA—qualifying leave, and the anticipated timing and duration of the leave. The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed for unexpected childbirth or adoption. . . .

Defendants argue that an employee must, at a minimum, request time off from work, "sufficient to qualify the employee for FMLA protection and thereby trigger the employers obligations with respect to the employee's FMLA rights." Defendants' Brief at 2. Defendants state that in this regard, "[i]t is not enough that the employer notify the employee core of circumstances that may at some undetermined point in the future ultimately lead to the need for a leave of absence. Rather, the employee must request an actual leave of absence from employment in order to trigger the provisions of the FMLA." *Id.*

Defendants rely in part on a decision from the Western District of New York to support this proposition. *See Cole v. Uni-Marts, Inc.,* 88 F.Supp.2d 67 (W.D.N.Y. 2000). Defendants emphasize that in *Cole* the court held that an employee must inform the employer of her request for time off for a serious health condition in order to request FMLA leave and that the FMLA does not place a duty on the employer to grant leave without such a request. Defendants' contention is that plaintiff in this case failed to *request leave* and instead only provided for employer with information that she was pregnant. They stress that at no time did plaintiff ever request time off from work because of her pregnancy. On this particular aspect of their arguments, they rely on a case from the Southern district of New York in which that court stated, "While an employer's duty to inquire may be predicated on statements made by the employee, the employer is not required to be clairvoyant." *Johnson v. Primerica,* 1996 WL 34148 (S.D.N.Y. Jan. 30, 1996).

Here, plaintiff argues that by telling Capo she was pregnant with a due date in January, she gave sufficient notice of her intent to take maternity leave. While the Court agrees that using the letters FMLA or words Family Medical Leave Act are not necessary, nevertheless, the Court finds, as a matter of law, that plaintiff has not met her burden, *de minimis* as it is, of proving that she requested leave and was denied it. No evidentiary proof in admissible form is before the Court showing that plaintiff informed defendants of her intent to either (1) take time off for the birth and recovery, or, (2) return to work following the birth of her second child. Though plaintiff argues in her memorandum of law that she discussed maternity leave with Capo, the cited reference is to her unverified Amended Complaint and her affidavit. Her affidavit does not make any mention

of discussing maternity leave and her unverified Amended Complaint does not amount to evidentiary proof requisite to defeat a summary judgment motion. *Champion v. Artuz,* 76 F.3d 483, 485 (2d Cir.1996). Therefore, having failed to make out a *prima facie* case, plaintiff's claim that she was illegally denied maternity leave under the FMLA must be dismissed. *See Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. 2548.

Plaintiff also claims that defendants failed to comply with portions of the FMLA that require the posting of a general notice of an employee's rights pursuant to the statute. 29 U.S.Code § 2619(a); 29 C.F.R. §§ 825.301(c) & 825.302(c). However, the statute, as plaintiff conceded at oral argument, does not provide plaintiff with a private right of action. Further, the lack of any such required posting does not excuse plaintiff's failure to ask for any leave in connection with her May 1999 pregnancy. Defendants' motion for summary judgment on all of plaintiff's FMLA claims is, thus, granted.

### *Defendant's Motion to Dismiss the Title VII and Pregnancy Discrimination Act Claims*

At oral argument, defense counsel conceded that for the purposes of this motion, plaintiff had made out a *prima facie* case of discrimination under the Civil Rights Act of 1964, Title VII, and the Pregnancy Discrimination Act. After reviewing the papers, the Court finds that defendants met their burden to come forward with a non-discriminatory reason for plaintiff's discharge, thus, the presumption of discrimination from the *prima facie* case now drops out of the picture. However, after carefully reviewing the evidence submitted, the Court finds that plaintiff has shown that she was discharged under circumstances that the employer's proffered reasons are a pretext for discrimination.

The Court first notes that plaintiff's termination occurred within days of the day she told Capo she was pregnant. She informed him the day she learned of her pregnancy, May 19, 1999, and she was terminated by him on June 8, 1999. In addition to the timing of the termination, the Court particularly notes that defendants' reasons for terminating plaintiff kept changing. First, plaintiff was told by Capo she was being terminated only for financial reasons. Then, the following day, Capo told her she was being terminated for financial and performance reasons. Two days later, Dee told plaintiff she was being terminated only for financial reasons. However, in a letter dated July 26, 1999, defendants' counsel wrote to plaintiff's counsel that plaintiff was terminated for financial and performance reasons. Defendants told the Equal Employment Opportunity Commission on September 21, 1999, that plaintiff's "work performance was questionable and that [she] was being terminated for financial reasons." Mullin aff. at 2. In contrast, Capo testified at a pretrial deposition that plaintiff was a "good worker." Capo dep. at 83.

Finally, the Court considers, in addition to these shifting reasons for plaintiff's termination, the affidavit of defendants' chief financial officer, Steve Schiano. That affidavit makes it clear to the Court that Schiano did not recommend cutting a staff position at the Fairport office until *after* the results of the second quarter were known, thereby calling into question Capo's reason for terminating plaintiff. As defense counsel conceded at oral argument, the second quarter ended on the last day of June, yet, plaintiff was terminated on June 8, 1999. The Court finds that for the purpose of defendant's summary judgment motion, plaintiff has met her burden to show that the non-discriminatory reason was false and that a trier of fact could "reasonably infer from the falsity of the

**564**

explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097. Since defendants have failed to show they are entitled to judgment as a matter of law, their motion for summary judgment on these causes of action is denied.

### CONCLUSION

For the reasons stated above, defendant's motion for summary judgment (# 19) is granted to the extent that plaintiff's causes of action under the FMLA are dismissed, but is otherwise denied.

IT IS SO ORDERED.