**Robert OGIBA, Plaintiff,**

v.

**BUSINESS SERVICES COMPANY OF UTICA, Defendant.**

No. 96–CV–1662.

United States District Court,
N.D. New York.

Aug. 27, 1998.

Kinnie Law Firm, Watertown, NY, for Plaintiff; Andrew R. Kinnie, of counsel.

Kernan and Kernan, P.C., Utica, NY, for Defendant; Kevin G. Martin, of counsel.

### MEMORANDUM—DECISION and ORDER

HURD, United States Magistrate Judge.

## I. INTRODUCTION

Presently before the court is defendant Business Services Company of Utica's ("BSC") motion for summary judgment pursuant to Fed.R.Civ.P. 56, on the ground that there exists no genuine issues of fact warranting a trial. Plaintiff Robert Ogiba ("Ogiba") opposes the motion. Oral argument on the motion was heard on June 11, 1998, in Utica, New York. Decision was reserved.

On October 15, 1996, plaintiff filed a complaint alleging that defendant willfully discharged him from his position as a copier technician because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623–634. Defendant alleges that plaintiff was terminated because of his unsatisfactory job performance in relation to coworkers during a time of company wide downsizing.

## II. FACTS

Ogiba was employed for nine years as a copier technician by BSC, a copier/facsimile sales and service dealer. He was interviewed and hired by Jim Abiusi ("Abiusi"), BSC's Vice President. Plaintiff was 41½ years old at the time he was hired.

During his years at the company, plaintiff serviced copy machines for BSC's customers. Typically, he responded to customer service calls by driving to the customer's site and performing technical repairs or maintenance on their copy machines. In addition to technical work, plaintiff was responsible for completing relevant paperwork and maintaining good relationships with BSC's customers.

In 1992, BSC hired a consultant to analyze staffing patterns at the company. The consultant analyzed BSC's billing, number of

contracts, and number of copiers in the Watertown area, and then compared these numbers to BSC's staffing. The consultant concluded that BSC was over staffed according to the industry standard of 150 copiers per technician. The consultant advised BSC that it needed to reduce its service employees by 1.2 employees in the Watertown office. At that time, there were four service technicians in the Watertown office along with one manager. The four service technicians were plaintiff, age 50; Richard Ames, age 51; Arthur Lull, age 48; and Warren Cronk, age 31.

BSC placed Abiusi in charge of implementing the consultant's recommendations and selecting which technician to discharge. Abiusi decided to terminate Ogiba, and the plaintiff was informed of the decision on April 27, 1992. Plaintiff alleges this decision was based on age discrimination. At the time he was terminated, plaintiff had an annual salary of $22,396.50, plus the use of a company car.

On September 21, 1992, plaintiff filed a charge with the New York State Division of Human Rights and the Equal Employment Opportunity Commission alleging age discrimination. Both the New York State Division of Human Rights and the Equal Employment Opportunity Commission held that the complaint was without merit. Plaintiff then commenced the instant suit.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983). Once

the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56; *Liberty Lobby, Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. At that point the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348.

### B. ADEA Claim

The disparate treatment theory under the ADEA prohibits an employer from terminating an employee because of his or her age. 29 U.S.C. § 623(a)(1). In order to establish a prima facie case of age discrimination, a plaintiff must prove that: "(1) at the time of discharge [ ]he was at least forty years of age, (2)[his] job performance was satisfactory, (3)[ ]he was discharged, and (4)[his] discharge occurred under circumstances giving rise to an inference of discrimination on the basis of age." *Grady v. Affiliated Central, Inc.,* 130 F.3d 553, 559 (2d Cir.1997); *Hollander v. American Cyanamid Co.,* 895 F.2d 80, 83 (2d Cir.1990). If a plaintiff establishes a prima facie case, he "creates a presumption that the employer unlawfully discriminated" against him. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

In order to rebut this presumption of discrimination, the burden shifts to defendant to produce a legitimate, age-neutral reason for the discharge. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089; *McDonnell Douglas,* 411 U.S. at 802–04, 93 S.Ct. 1817. The plaintiff must then prove that defendant's reason for dis-

charge was only a pretext, and that he was the victim of intentional discrimination. *Saint Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Plaintiff can prove that defendant's reason was pretextual either directly or indirectly. To directly prove pretext, plaintiff must persuade "the court that a discriminatory reason more likely motivated the employer." *Id.* Plaintiff can indirectly prove pretext by "showing that the employer's proffered explanation is unworthy of credence." *Binder v. Long Island Lighting Co.*, 933 F.2d 187, 192 (2d Cir.1991)(quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089).

## C. *Prima Facie Case*

It is undisputed that plaintiff was over the age of forty when discharged; thus he meets these two elements of the prima facie test. The other two elements, to wit, that his job performance was satisfactory, and that his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of age, are in issue. *See Grady*, 130 F.3d at 559.

### 1. *Satisfactory Job Performance*

■ Whether an employee's performance was satisfactory depends upon the employer's criteria. *Thornley v. Penton Publishing, Inc.*, 104 F.3d 26, 29 (2d Cir. 1997). The employer's criteria is critical, regardless of what a judge or jury may consider as reasonable. *Id.* Only a showing that

the employer set performance criteria in bad faith defeats the standard set by the employer. *Id.* Thus, where an employer sets expectations in good faith, the employee must meet those expectations in order to establish this element of a prima facie case. *Id.* 104 F.3d at 30.

■ BSC contends that it decided to terminate plaintiff because of unsatisfactory job performance in comparison to other workers. Abiusi studied the evaluations of the four service technicians, plaintiff and the three others, for the prior two years.[1] Plaintiff had the lowest ratings of the four technicians.[2] Plaintiff's evaluation record for the two years prior to his discharge is uncontroverted. Ogiba alleges that his job performance was satisfactory because he was trained on the greatest number of machines; he trained other employees on machines; he received the Employee of the Year Award; and he consistently received good evaluations and comments from his superiors. Contradictory assertions of the parties must be resolved in favor of plaintiff, the non-moving party. *See Babcock v. CAE–Link Corp.*, 878 F.Supp. 377, 384 (N.D.N.Y.1995).

Moreover, BSC does not contend that it fired plaintiff for poor performance. Rather, BSC contends that it fired plaintiff because of a reduction in force. The criteria it used to determine which employee would be terminated was performance. This distinction is critical. In essence, BSC ranked its em-

---

1. It is important to note that these evaluations were made *before* the consultant's recommendation to reduce the number of service technicians. Thus, it cannot be argued that BSC was creating a "paper record" to justify terminating plaintiff and hiding an ulterior motive of discharge because of age.

2. Specifically, plaintiff had weighted scores of 2.75 and 2.55 for the two years prior to the layoff. Ames' two most recent scores were 2.70 and 2.10; Cronk's scores were 2.15 and 2.15; and Lull's scores were 2.30 and 2.55. A lower score indicates a better score.

Additionally, plaintiff received the worst subjective comments on his evaluations when compared with the three other service technicians. While some comments on plaintiff's evaluations characterized plaintiff as "having a good understanding of the machines" and "industrious," many more comments stated, for example:

Bob is reluctant to follow through on his daily paperwork, ITF's, tickets, gas slips mileage sheets. This cooperation with his branch manager needs to improve.

His abilities of a technical nature are overshadowed by his weakness in completing accurate paperwork. Filling out accurate tickets in the customers office and giving them a signed copy will help managers better help communicate with our clients' needs.

This ratings period has shown a decline in his ability to follow through on management's direct and indirect requests. He needs to follow through in *all* areas of his job, paperwork, vehicle upkeep, customer relations, etc.

In comparison, Ames, Lull, and Cronk, the other service technicians, received higher scores and more positive comments. (*See generally*, Abiusi Aff. Apr. 20, 1998.)

ployees by performance, then retained the highest performers. There is no contention that Ogiba would have been fired for unsatisfactory performance without the reduction in force. Ogiba's performance was unsatisfactory in comparison to the other employees, not in relation to performance of the job.[3] In these circumstances, plaintiff meets the de minimis burden of showing satisfactory performance, establishing this element of his prima facie case.

### 2. Inference of Age Discrimination

■ BSC argues that Ogiba was not terminated under circumstances giving rise to an inference of age discrimination, and thus does not meet the fourth element needed to establish a prima facie case of age discrimination. Ogiba alleges that such a circumstance was created because of comments made by Abiusi, John Nimmo ("Nimmo"), the local Watertown manager, and Chet Galinski ("Galinski"), a corporate officer, referring to older technicians as "old Farts." However, even viewed most favorably to plaintiff, these facts alone do not give rise to an inference of discrimination. Abiusi himself was 52 at the time of the discharge, making him older than the plaintiff. Additionally, Abiusi both hired and fired plaintiff. At both times, plaintiff was within the protected age group. The Second Circuit has held that when the person who made the decision to hire the employee is the same person who decides to fire the employee, "it is difficult to impute to [him] an invidious motivation that would be inconsistent with the decision to hire." *Grady*, 130 F.3d at 560.

Ogiba himself provides evidence that use of the phrase "old Farts" did not necessarily amount to an inference of age discrimination in admitting that Galinski used the phrase "old Farts" humorously at Christmas parties.

These comments are innocuous given the context in which they were made, and thus insufficient to raise a triable issue of fact. *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir.), *cert. denied*, 513 U.S. 1058, 115 S.Ct. 666, 130 L.Ed.2d 600 (1994 ).

■ Additionally, plaintiff has not shown a nexus between the alleged comments made by Nimmo and plaintiff's termination. A nexus is established when the alleged discriminatory comments are directly related to "an employment decision, or hiring or firing practice." *EEOC v. Clay Printing*, 955 F.2d 936, 942 (4th Cir.1992). Thus, "isolated comments unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." *See Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir.1994). Here, Abiusi, not Nimmo, decided whom to terminate. Thus, Nimmo's alleged comments are isolated and unrelated to plaintiff's termination, and are insufficient to support an inference of age discrimination. *See Woroski v. Nashua Corp.*, 31 F.3d 105, 109–10 (2d Cir.1994)(stray remarks, even if made by a decision maker, do not constitute evidence to make out a case of employment discrimination).

■ Similarly, plaintiff's allegations that defendant retained only younger employees while firing only older employees does not raise an inference of age discrimination. It is undisputed that the pool of candidates considered for discharge included only the four technicians in the Watertown office. Thus, the only pool of people relevant in any statistical analysis are the four technicians in the Watertown office. Plaintiff instead relies on statistics involving employees outside this pool, including those who neither worked in the Watertown office, nor were service technicians. Statistically, plaintiff's arguments are flawed.[4]

---

**3.** This is analogous to the situation in which an employer hires the person it considers to be the best qualified applicant. *See EEOC v. Trans World Airlines, Inc.*, 544 F.Supp. 1187, 1224 (S.D.N.Y.1982). A person not hired could establish the qualification element of a prima facie case, although in the employer's judgment that person was less qualified than the one it hired. *Id.*

**4.** Even if plaintiff's statistical argument was valid, courts have held that examining only "a small pool of employees is not probative of discrimination." *O'Connor v. Consolidated Coin Caterers Corp.*, 56 F.3d 542, 548 (4th Cir.1995), *rev'd on other grounds*, 517 U.S. 308, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996); *see Birkbeck*, 30 F.3d at 511 (statistical data relying on only four workers is "too small a sample to have any probative value" in an age discrimination suit); *Palmer v. United*

Further, a comparison of age and performance among the service technicians in Watertown is not helpful to plaintiff's prima facie case. Of the three technicians retained by BSC, one employee was substantially the same age as plaintiff (Lull, age 48), and another employee was older than plaintiff (Ames, age 51). While the third retained technician was 31 years of age (substantially younger than plaintiff), overall no reasonable jury could infer discrimination based upon age in laying the plaintiff off from this fact alone. This is especially true in view of the undisputed job evaluations and comments. *See supra* notes 1–2.

## IV. *CONCLUSION*

Ogiba met his burden of establishing the satisfactory performance element of a prima facie case. However, he has failed to set forth any facts from which an inference of discrimination could be made, thus failing to establish this element of a prima facie case. Summary judgment must be granted to BSC.

Therefore, it is

ORDERED that

1. Business Services Company of Utica's motion for summary judgment is GRANTED; and

2. The Clerk is directed to enter judgment dismissing the complaint

IT IS SO ORDERED.

*States,* 794 F.2d 534, 539 (9th Cir.1986)( sample sizes between five and thirteen are "too small to have any predictive value" in an ADEA suit and should be ignored).