**Keith GRANT, Plaintiff,**

v.

**CORNELL UNIVERSITY, Defendant.**

**No. 97–CV–1130 (NAM).**

United States District Court,
N.D. New York.

March 2, 2000.

Berg Law Office, Syracuse, NY (Stefan D. Berg, of counsel), for Plaintiff.

Office of University Counsel, Ithaca, NY (Nelson E. Roth, Valerie L. Cross, Wendy E. Tarlow, of counsel), for Defendant.

## MEMORANDUM–DECISION AND ORDER

MORDUE, District Judge.

## INTRODUCTION

Plaintiff Keith Grant, an African American, brings suit against defendant Cornell University, alleging discriminatory denial of tenure and discharge, in violation of 42 U.S.C. § 1981 and the New York State Human Rights Law.[1] Presently before the Court is defendant's motion for summary judgment. Plaintiff opposes the motion. Oral argument was held in Syracuse, New York on May 17, 1999. For the reasons set forth below, defendant's motion is granted.

---

1. The Court notes that plaintiff's complaint seeks damages for violation of not only § 1981 and the State Human Rights Law, but for violation of "the Civil Rights Act of 1991." Compl. at ¶¶ 1, 6, 74, 78. It is clear to the Court that plaintiff claims nothing more than a violation of § 1981; the Civil Rights Act of 1991 does not provide a ground for relief separate and apart from § 1981, which it amended, along with Title VII and the ADA.

## BACKGROUND

Plaintiff was hired as an assistant professor in the Theater Arts Department of the College of Arts and Sciences, Cornell University ("the Department") effective July 1, 1989. The decision to hire plaintiff was approved by the Senior Faculty of the Department, and the Department Chair, Professor Bruce Levitt. The position was for three years; it was not a tenured position. Rather, Cornell had the option to renew plaintiff's appointment for another three years. Near the end of this second three-year period, plaintiff would be reviewed for tenure. If tenure was denied, he would be given a final one-year term of employment. Plaintiff was apparently the first person of color to ever be hired into a tenure-track position within the Department.[2]

Near the end of his first three-year term, Cornell decided to reappoint plaintiff for the second term. A letter from Levitt, dated March 2, 1992, confirmed the reappointment. The letter also reviewed plaintiff's teaching, artistic work, service and collegiality. Many of the comments were positive, but some were negative. The letter also explicitly set out the criteria plaintiff needed to achieve to qualify for tenure. In essence, the letter stated that

in three years time you will be held to a standard of achieving some level of national recognition. This level of national recognition is a necessary condition for all candidates to be promoted to Associate Professor with indefinite tenure. It is, therefore, incumbent upon you to immediately choose and develop an area of expertise: directing, acting or teaching. In one of these areas you must achieve

significant credentials in the next three years. . . . We want to emphasize at this juncture that a national reputation is a necessary condition for promotion.

Def. Ex. D at 4.

To assist plaintiff in the tenure process, the Senior Faculty assigned Professor David Feldshuh to serve as his mentor. In this role, Feldshuh provided advice and counsel, and served as a conduit between plaintiff and the Senior Faculty, who would ultimately vote on whether to recommend plaintiff's tenure.

Feldshuh acted in this capacity from 1992 through 1995. Much of the feedback he provided to plaintiff was negative. For example, in May, 1993, Feldshuh met with plaintiff and provided extensive comments and evaluation; this was followed up with a thorough written letter, to memorialize the meeting. The tone was overwhelmingly negative. Among other things, plaintiff was criticized for grade inflation, poor communication with students and faculty and poor artistic achievement. Feldshuh characterized the review letter as being "less than enthusiastic," citing "problems in all the areas under consideration." Pl.'s Ex. 8 at 5. He concluded,

[m]y perspective . . . after viewing letters and garnering opinions from fellow members of the faculty is that you will need significant improvement in all [ ] areas of endeavor (national reputation, teaching, collegiality and service) for you to have a strong tenure case.

*Id.*

From the perspective of the Department, plaintiff's problems continued

2. To support this contention, plaintiff cites to Pl.'s Ex. 1. As with many of his exhibits, however, the document referred to does not establish what it is cited for. Exhibit 1 appears to be a list of faculty within the Department between 1985 and 1995. The document, while listing professor's names, does not elaborate on their race, and, of course, the race of said faculty is not ascertainable from their names. Moreover, a list of faculty for a ten-year period, even disclosing race, is not evidence that plaintiff "was the first person of color to be offered a tenure track position in the [h]istory of the Department of Theater Arts." Pl.'s Statement of Material Facts at ¶ 3. Nonetheless, drawing all inferences in favor of plaintiff on this summary judgment motion, as the Court must, the Court presumes plaintiff is the first person of color hired into a tenure-track position within the Department.

through 1994 and 1995. Both from within the faculty, and without, plaintiff received consistent criticism in all areas which were being taken into account for tenure purposes. Though plaintiff received accolades from some individuals, the Senior Faculty gave greater weight to the criticisms, some of which derived from their own personal observations.

Near the end of his second term, in 1995, plaintiff was formally reviewed for tenure. As a result of plaintiff's failure to achieve the requirements he had been apprised of as early as 1992, the Senior Faculty unanimously recommended denial of tenure. Seven members of the Senior Faculty voted; five were the same members who had initially recommended plaintiff's hiring in 1989, and his reappointment in 1992.

Plaintiff requested reconsideration of the negative vote in a 44–page rebuttal letter. During reconsideration, another professor became chair of the Department. Despite the Department's change in leadership, the Senior Faculty again voted to unanimously recommend denial of tenure.

Plaintiff then appealed to the Dean of the College of Arts and Sciences, who convened an *ad hoc* committee to review the negative recommendation. None of the members of the *ad hoc* committee were faculty within the Department. This committee reviewed the decision of the Department, and arguments made by plaintiff. Although the committee was somewhat critical of the Department's tenure review, it could "not find compelling evidence that the Department of Theater Arts intentionally acted in bad faith." Def. Ex. OO at 7. The committee unanimously stated that it did not find

> ready evidence to contradict the theater faculty's word that Professor Grant does not, at this point and by its professional standards, have a "national reputation," that his teaching, however inspired for some undergraduates, fails to provide adequate background for upper-level courses, and that his sense of collegiality

falls short of expectations.... In sum, the candidate's record of professional distinction is open to question; of scholarly distinction, negligible; of undergraduate teaching, good; of teaching at advanced levels, disputed or inadequate; of acting ability, excellent; of directorial competence, uneven, disputed, or poor. We do not believe that this candidate merits tenure in his department at Cornell, and we regret that we cannot advise the Dean to honor the candidate's appeal.

Def. Ex. OO at 5.

The Dean concurred in the committee's findings, thus ratifying them, and notified plaintiff that as an unsuccessful tenure candidate, he was entitled to a terminal year of employment, from January 1 through December 31, 1996.

Plaintiff appealed the decisions of the *ad hoc* committee and the Dean to the Dean of the Faculty. The Dean of the Faculty referred the matter to a university appeals committee, comprised of five faculty members, none of whom were members of the Department. The appeals committee conducted an extensive investigation into plaintiff's claims, including his claim of racial discrimination within the Department, meeting twelve times and interviewing seven witnesses, including plaintiff. In a 28–page decision, the committee unanimously rejected each of plaintiff's grounds for appeal.

Finally, after the appeals failed, rather than serve out the remainder of his terminal year, plaintiff voluntarily resigned his position at Cornell, effective August 15, 1996.

On July 30, 1997, plaintiff brought suit against Cornell, alleging federal and state discrimination on the basis of race. He set forth four claims: discriminatory discharge in violation of 42 U.S.C. § 1981; discriminatory denial of tenure in violation of 42 U.S.C. § 1981; discriminatory discharge in violation of N.Y. Exec. Law

§ 296; and discriminatory denial of tenure in violation of N.Y. Exec. Law § 296.[3]

## DISCUSSION

The principles that govern summary judgment motions are well established.

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–32, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As the Second Circuit has recently emphasized, however, "summary judgment may not be granted simply because the court believes that the plaintiff will be unable to meet his or her burden of persuasion at trial." *Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 54 (2d Cir.1998). Rather, there must be either an absence of evidence that supports plaintiff's position, *see Norton v. Sam's Club,* 145 F.3d 114, 117–20 (2d Cir. 1998), "or the evidence must be so overwhelmingly tilted in one direction that any contrary finding would constitute clear error." *Danzer,* 151 F.3d at 54.

■ Courts examining employment discrimination claims brought pursuant to 42 U.S.C. § 1981 apply the same analysis used under Title VII.[4] *See McLee v. Chrysler Corp.,* 109 F.3d 130, 134 (2d Cir.1997);

*Hargett v. National Westminster Bank,* 78 F.3d 836, 838 (2d Cir.1996); *Carter v. Cornell Univ.,* 976 F.Supp. 224, 233 (S.D.N.Y. 1997), *aff'd,* 159 F.3d 1345 (2d Cir.1998). This analysis utilizes the familiar three-step burden-shifting test of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Pursuant to this three-prong test, plaintiff must first establish a prima facie case. *See Austin v. Ford Models, Inc.,* 149 F.3d 148, 152 (2d Cir.1998). If plaintiff makes this showing, the burden shifts to the employer to provide "a legitimate, non-discriminatory purpose for its adverse employment action." *Id.* at 153. "Any such stated purpose is sufficient to satisfy the defendant's burden of production; the employer does not have to persuade the court that the stated purpose was the actual reason for its decision." *Id.* Plaintiff is then required to show that the employer's proffered reasons are a pretext for discrimination, and that more likely than not the employee's race was a motivating factor for the discharge. *See id.*

■ The Second Circuit has noted repeatedly that tenure decisions involve unique factors which set them apart from ordinary employment decisions, and federal courts should exercise caution in reviewing them. *See Fisher v. Vassar College,* 70 F.3d 1420, 1434–35 (2d Cir.1995), *reh'g en banc,* 114 F.3d 1332 (2d Cir.1997); *Zahorik v. Cornell Univ.,* 729 F.2d 85, 92 (2d Cir.1984); *Lieberman v. Gant,* 630 F.2d 60, 64 (2d Cir.1980). *See also Weinstock v. Columbia Univ.,* 1999 WL 549006, at *8 (S.D.N.Y.1999); *Batra v. Pace Univ.,* 1998 WL 684621, at *7 (S.D.N.Y.1998), *aff'd,* 182

---

**3.** Though plaintiff states separate claims for discriminatory denial of tenure and discriminatory discharge, it is clear that these claims are one in the same. To the extent plaintiff was discharged, it was only as a result of Cornell denying him tenure; an employee denied tenure is accorded one terminal year of employment, after which time his or her employment with Cornell ceases. Alternatively, as Cornell is quick to point out, and plaintiff does not contest, plaintiff chose not to remain for his terminal year, but resigned instead.

The Court thus considers plaintiff as solely bringing claims of discriminatory denial of tenure in violation of federal and state law.

**4.** Similarly, courts examine claims brought under the New York State Human Rights Law under the same analysis. *See Torres v. Pisano,* 116 F.3d 625, 629 n. 1 (2d Cir.1997); *Reed v. A.W. Lawrence & Co.,* 95 F.3d 1170, 1177 (2d Cir.1996).

F.3d 898 (2d Cir.1999); *Negussey v. Syracuse Univ.*, 1997 WL 141679, at *6 (N.D.N.Y.1997) (Munson, S.J.). "Because tenure decisions involve a myriad of considerations and are made by numerous individuals and committees over a lengthy period of time, a plaintiff 'faces an uphill battle in [his] efforts to prove discrimination on the basis of race . . . in the refusal to grant [him] tenure.'" *Batra*, 1998 WL 684621 at *7 (quoting *Kawatra v. Medgar Evers College*, 1997 WL 722703, at *5 (E.D.N.Y.1997)) (alterations in original). Thus, while tenure decisions are not immune from review, courts are cautious in second-guessing tenure decisions, as the "court does not sit as a super tenure-review committee." *Negussey*, 1997 WL 141679 at 6. With this cautionary principle in mind, the Court now engages in the *McDonnell Douglas* three-prong analysis.

■ Plaintiff has the initial burden of proving a prima facie case of discrimination by preponderance of the evidence. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir.1994). In a discriminatory tenure denial case, a plaintiff must show that: (1) he belongs to a protected class; (2) he was qualified for tenure; (3) he was denied tenure; and (4) the denial of tenure occurred under circumstances giving rise to an inference of discrimination.[5] *See Fisher*, 114 F.3d at 1344; *Weinstock*, 1999 WL 549006 at *7 n. 4; *Jalal v. Columbia Univ.*, 4 F.Supp.2d 224, 232–33 (S.D.N.Y.1998); *Negussey*, 1997 WL 141679 at *6; *Guntur v. Union College*, 1992 WL 209322, at *5 (N.D.N.Y. 1992) (McCurn, C.J.).

Cornell appears to concede that plaintiff has made out a prima facie case. *See* Def.

Mem. of Law at 7–8 ("Cornell concedes for the limited purpose of this motion that Plaintiff is an African American, that he had some support from referrants as to his qualifications for tenure, that he was denied tenure, and that other members of the Department who are not African Americans have been granted tenure."). Notwithstanding this apparent concession, however, the Court is unconvinced.

■ While recognizing that plaintiff's prima facie burden is "minimal," *Fisher*, 114 F.3d at 1344, it is not nonexistent. In order to show that he was qualified for tenure, plaintiff must demonstrate that "[s]ome *significant* portion of the departmental faculty, referrants or other scholars in the particular field hold a favorable view on the question." *Zahorik*, 729 F.2d at 93–94 (emphasis supplied). *Accord Weinstock*, 1999 WL 549006 at *7 (quoting *Zahorik*); *Jalal*, 4 F.Supp.2d at 233 (same); *Guntur*, 1992 WL 209322 at *5 (same).

Considerably absent from the record is any proof that "some *significant* portion" of the Department viewed plaintiff as qualified for tenure. It is undisputed that *none* of the Departmental faculty believed plaintiff qualified for tenure; indeed, the faculty unanimously voted to recommend denial of plaintiff's tenure, specifically finding that he was not qualified. On reconsideration, the faculty unanimously voted to recommend denial of tenure a second time.

Also noticeably absent from the record is any evidence that "some *significant* portion" of the referrants or scholars in plaintiff's field found him qualified for tenure. Plaintiff does come forward with evidence showing that *some* referrants or outside

---

5. As recently noted by several district courts, the Second Circuit has been inconsistent in its formulation of the fourth element of the prima facie case, alternatively construing it as "[4] the ultimate filling of the position by a person not of the protected class." *Fisher*, 114 F.3d at 1335. *See, e.g., Cifra v. General Elec. Co.*, 62 F.Supp.2d 740, 743 n. 2 (N.D.N.Y.1999) (McCurn, S.J.); *Weinstock v.*

*Columbia Univ.*, 1999 WL 549006, at *7 n. 4; *Jenkins v. Metropolitan Opera Ass'n, Inc.*, 1999 WL 147745, at *5 n. 3 (S.D.N.Y.1999). Second Circuit decisions post-*Fisher* have used the fourth element this Court relies upon. *See Austin*, 149 F.3d at 152; *Shumway v. United Parcel Serv.*, 118 F.3d 60, 63 (2d Cir.1997).

scholars (some who knew plaintiff personally and some who did not) held a positive view of plaintiff's tenure case, by presenting evidence of letters written to the Department in reference to plaintiff's tenure review. As pointed out by Cornell, however, many of these positive letters are couched in significantly qualified language; one of the two extremely positive letters was written by plaintiff's professional mentor (Sabatine) and the other by a professor plaintiff studied under when he was in school (Gister). For example, Gister's letter, while flowing with complements, is of dubious value. First, Gister noted plaintiff was a former student, consequently stating "so I am prejudiced." Pl.'s Ex. 24 at 28. Second, though specifically asked by the Department to evaluate plaintiff based on several factors, Gister refused to do so, stating, "[t]hese questions I leave to you. They are not important to me." *Id.* Having thoroughly reviewed the record as presently constituted, the Court determines that too few letters or opinions were garnered in plaintiff's favor from outside referrants or scholars to rise to level of *significant* support, as required by *Zahorik.* As a result, plaintiff fails to make out a prima facie case.

This conclusion is supported when the Court compares Grant's situation to those in other cases where plaintiffs were able to make out a prima facie case by showing they were qualified for tenure. In these cases, the plaintiff submitted evidence that his or her department or school supported a favorable tenure decision to significant

degree; in many cases, unanimously. *See Zahorik,* 729 F.2d at 89–91 (of four plaintiffs, all received support from their department's faculty for tenure); *Weinstock,* 1999 WL 549006 at \*2 (plaintiff received the unanimous support of her department for tenure); *Jalal,* 4 F.Supp.2d at 227 (same); *Guntur,* 1992 WL 209322 at \* 3–4 (same). By contrast, in *Batra,* 1998 WL 684621 at \*8, the plaintiff was unable to make out a prima facie case of tenure discrimination, when a single faculty member, of 411, arguably held a favorable view on the question of his tenure. This case is analogous to *Batra,* and clearly distinguishable from *Zahorik, Weinstock, Jalal* and *Guntur.* Plaintiff received no support from the Department for tenure, nor, for that matter, from any of the faculty members who sat on the committees which reviewed the Department's recommendation. Combined with plaintiff's failure to supply evidence of significant support from outside scholars or referrants, the Court concludes plaintiff has not come forward with evidence sufficient to demonstrate that he was qualified for tenure.

Plaintiff also comes forward with very little evidence, if any, suggesting that his tenure denial occurred under circumstances giving rise to an inference of discrimination. Primarily, plaintiff alleges that he was the first African American on tenure-track within the Department, provides several anecdotal stories about poor treatment he received within the Department,[6] and provides three unsworn letters

---

**6.** Plaintiff claims that a Departmental secretary treated him in a discriminatory manner on his first day of work when she did not believe that he was an incoming assistant professor. He also details an exchange with Levitt where he was told he needed to stop complaining of discriminatory treatment within the Department or he would never be tenured. Two problems considerably weaken the value of this evidence.

First, these exchanges are solely detailed in plaintiff's "affidavit," which is unsigned and unsworn. They are not mentioned elsewhere in admissible form. The fact that the affidavit is unsigned was brought to plaintiff's atten-

tion in Cornell's reply papers, more than nine months ago. Despite Cornell noting this failure, and objecting to it, plaintiff made no effort to submit the required signature page to the Court. It is not the Court's job to ensure that counsel diligently complete their tasks, and submit legal papers in proper and admissible form. As the record is presently constituted, plaintiff's affidavit is defective, and of no evidentiary value.

Second, and undisputed by the parties, neither the secretary nor Levitt voted on plaintiff's tenure. Plaintiff has not elaborated how the secretary or Levitt's allegedly discriminatory conduct tainted plaintiff's ten-

from other African Americans who also complain, anecdotally, of racial tensions within the Department. This evidence is of insufficient nature and extent to make out an issue of fact as to whether plaintiff was denied tenure under circumstances giving rise to an inference of discrimination; coupled with plaintiff's failure to demonstrate his qualification for tenure in the first place, no reasonable jury could conclude that plaintiff was denied tenure due to his race.

■ Even assuming, *arguendo*, that plaintiff could make out a prima facie case, his claims still fail. Cornell meets its shifting burden under *McDonnell Douglas* by articulating legitimate, nondiscriminatory reasons for plaintiff's tenure denial by providing abundant evidence that plaintiff was denied tenure because he did not meet the Department and University's tenure requirements. *See Austin*, 149 F.3d at 153; *Fisher*, 114 F.3d at 1336.

As Cornell offers legitimate, non-discriminatory reasons for the denial of tenure, plaintiff has the final burden of showing that the denial occurred because of discriminatory motive. *See Austin*, 149 F.3d at 153; *Fisher*, 114 F.3d at 1336. Specifically, plaintiff "must put forth adequate evidence to support a rational finding that the legitimate non-discriminatory reasons proffered by the employer were false, and that more likely than not the employee's [ ] race was the real reason for" the denial of tenure. *Holt v. KMI–Continental, Inc.*, 95 F.3d 123, 129 (2d Cir.1996). *Accord Austin*, 149 F.3d at 153; *Fisher*, 114 F.3d at 1339. This, plaintiff has failed to do.

At this stage, "plaintiff may rely on the evidence constituting the prima facie case, together with supportable inferences to be drawn from the false or erroneous character of the employer's proffered reason for the adverse action." *Fisher*, 114 F.3d at 1333. The Second Circuit has made clear, however, that if "plaintiff's evidence was barely sufficient to make out a prima facie case, it may not be sufficient to establish discrimination after the defendant has proffered a neutral rationale." *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir.1997); *accord Fisher*, 114 F.3d at 1346 ("[t]he mere fact that a plaintiff has met the reduced demands ... for a prima facie case gives little assurance that plaintiff has significant proof of discrimination.").

■ Nearly all the evidence catalogued in plaintiff's brief concern allegations that the Department deviated from its normal procedures when reviewing his tenure case. *See* Pl.'s Mem. of Law at 6 ("[t]he case before this court is rife with procedural irregularities and inconsistencies."). When paired with evidence of an impermissible motivation, such as race discrimination, this evidence might support or reinforce an inference of discrimination. Without evidence of discriminatory animus, however, such evidence can not support civil rights liability. *See Scaria v. Rubin*, 117 F.3d 652, 654–55 (2d Cir.1997).

■ Plaintiff puts forth almost no evidence of discriminatory animus. In essence, he points to the fact that other than himself, no African American has been hired into a tenure-track position within the Department, coupled with three letters written by others complaining, anecdotally, of racial tension within the Department, and two purportedly discriminatory events involving Departmental staff.

The first contention, the lack of African American faculty, is immaterial, given

ure review with the other senior faculty, and for that matter, how they tainted the two levels of review plaintiff sought outside the Department. Thus, even if both exchanges unquestionably took place, plaintiff provides no nexus between the allegedly discriminatory conduct and his adverse tenure decision.

Furthermore, the Court notes the exchanges were temporally removed from the tenure decision; the experience with the secretary took place six years before plaintiff's tenure review, the exchange with Levitt, two years prior to tenure review.

plaintiff's failure to provide any evidence about the qualified pool of candidates for such positions. *See Halbrook v. Reichhold Chems., Inc.,* 766 F.Supp. 1290, 1301–02 (S.D.N.Y.1991), *aff'd* 956 F.2d 1159 (2d Cir.1992); *see also Coser v. Moore,* 739 F.2d 746, 750 (2d Cir.1984) ("the availability pool for certain specialized positions may be very small.... [and] sex characteristics of a particular availability pool may differ from those of the general population"). Thus, it is insufficient for plaintiff to allege, in his unsigned and unsworn affidavit that "there are qualified African Americans with comparable qualifications to those who are tenured at Cornell," Pl.'s Aff. at ¶ 10, and that its failure to hire or tenure African American faculty within the Department is evidence of discrimination.

The second contention, plaintiff's reference to the three letters, is equally unavailing. To properly oppose summary judgment on the basis of the contentions raised within the letters, plaintiff was required to submit this evidence in admissible form, such as by affidavit, which he failed to do. *See LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham,* 185 F.3d 61, 65 (2d Cir.1999) ("a district court should disregard an unsworn letter in ruling on a summary judgment motion"); *Chaiken v. VV Publishing Corp.,* 119 F.3d 1018, 1033 (2d Cir.1997), *cert. denied,* 522 U.S. 1149, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998) (same); *United States v. All Right, Title Interest in Real Property and Appurtenances thereto known as 143–147 East 23rd St.,* 77 F.3d 648, 657–58 (2d Cir.1996) (nonmovant's submission of an unsworn letter "was an inappropriate response to the [movant's] motion for summary judgment, and the factual assertions made in that letter were properly disregarded by the court"). Even if the anecdotes contained in the letters were in admissible form, they still fail to show evidence of discrimination in plaintiff's tenure case.

Finally, plaintiff attempts to produce evidence of discrimination by pointing to two exchanges with Department staff. This evidence is solely contained in his unsworn and unsigned affidavit, which, as mentioned previously, *see supra* note 6, is not in admissible form, and of no evidentiary value. Plaintiff maintains that on his first day at Cornell, a Department secretary did not believe that he was an incoming assistant professor, and made him wait while she checked his records. Plaintiff states that "I never forgot the humiliation I felt as I waited for Chris Heslop to acknowledge the fact that I was an Assistant Professor and not a lecturer or graduate student.... I felt as if she did not believe that an African American could be a faculty member." *See* Pl.'s Aff. ¶ 3. Plaintiff's use of this exchange as evidence of discrimination is purely speculative. Courts are not permitted to "go beyond the language of the statement at issue to find inferences of bias where none exist." *Jalal,* 4 F.Supp.2d at 236 (citing *Fisher,* 70 F.3d at 1441). Even if the Court could infer any racial undertone to the exchange, as previously mentioned, *see supra* note 6, the record is devoid of any evidence that the secretary played a role in the review of plaintiff's tenure.

Similarly, plaintiff claims that in 1993, one year into his second term, while having a discussion with Levitt about the unequal treatment of minorities within the Department, Levitt said, "[y]ou people don't belong here. You would not have been hired if there had not been two openings. Ron [Wilson—a white faculty member] would have gotten the job and not you.... [Y]ou will never be tenured here if you don't stop talking about these things." Pl.'s Aff. at ¶ 4. Even if the Court credits plaintiff's version of the facts, as it must for purposes of this summary judgment motion, this exchange is insufficient to show discrimination in his tenure decision. "[I]t is clear that in order to avoid summary judgment a plaintiff must demonstrate [ ] some nexus between the racial remarks, slurs, or comments and the adverse employment decision in ques-

tion." *Allen v. Argenbright Security, Inc.,* 1999 WL 1129058, at *5 (E.D.N.Y.1999). *Accord Coleman v. Prudential Relocation,* 975 F.Supp. 234, 240, 243 (W.D.N.Y.1997) (granting summary judgment when discriminatory comments occurred several months prior to several plaintiffs' termination); *LaCoparra v. Pergament Home Centers, Inc.,* 982 F.Supp. 213, 223 (S.D.N.Y.1997) (summary judgment granted where the allegedly discriminatory comments by plaintiff's supervisor were ambiguous and temporally removed from plaintiff's termination); *Thomson v. Saatchi & Saatchi Holdings (USA), Inc.,* 958 F.Supp. 808, 824 (W.D.N.Y.1997) (single remark by supervisor that he was going to "get rid of the old guy because he was over the hill" was insufficient to raise issue of fact about whether plaintiff was terminated on account of his age); *Nawrocki v. Daeman College,* 1997 WL 211338, at *3 (W.D.N.Y.1997) (supervisor's ethnic slur not temporally proximate and unrelated to employment decision).

The comment made by Levitt, if true, was temporally removed from and unrelated to plaintiff's denial of tenure. The comment took place years prior to the Department's vote on plaintiff's tenure. This was enough to mitigate far more discriminatory remarks in *Allen, Coleman, LaCoparra* and *Thomson.* Plaintiff also ignores the undisputed fact that Levitt did not vote on his tenure denial, and fails to come forward with any evidence as to how Levitt may have tainted the decision-making process of the seven faculty members within the Department who did. Standing alone, Levitt's statement does not constitute sufficient evidence that plaintiff's tenure denial was the result of race discrimination.

The Court also notes that the undisputed facts of this case affirmatively indicate the *lack* of any discriminatory animus on Cornell's part. For one thing, the Second Circuit has explained that there are certain factors that "strongly suggest that invidious discrimination was unlikely. For example, when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Grady v. Affiliated Central, Inc.,* 130 F.3d 553, 560 (2d Cir.1997) (citing *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 847 (1st Cir.1993); *Lowe v. J.B. Hunt Transport, Inc.,* 963 F.2d 173, 174–75 (8th Cir.1992); *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991)). *See also Ralkin v. New York City Transit Auth.,* 62 F.Supp.2d 989, 1000 (S.D.N.Y.1999); *Ogiba v. Business Services Co. of Utica,* 20 F.Supp.2d 379, 383 (N.D.N.Y.1998) (Hurd, M.J.); *Phillips v. Merchants Ins. Corp.,* 3 F.Supp.2d 204, 209–10 (N.D.N.Y.1998) (McAvoy, C.J.). In *Ogiba,* Judge Hurd noted that it was difficult to impute discriminatory motive to a supervisor who hired plaintiff, knew of his protected status and fired him nine years later. *Ogiba* illustrates, contrary to plaintiff's protestations, that the *Grady* rubric applies to his case; plaintiff was hired and denied tenure within a six year time period, and it was a mere three years between plaintiff's reappointment and the ultimate decision to deny him tenure. Essentially the same decision makers were involved in hiring plaintiff, renewing his appointment, and voting to recommend denial of his tenure. It is undisputed that five of the seven members of the Senior Faculty who participated in plaintiff's tenure denial were the same individuals who recommended plaintiff's hire after a national search in 1989, and recommended the renewal of his appointment; of the two remaining members, one was a junior faculty member at the time of plaintiff's hire, and served on the search committee which recommended plaintiff's hire. As set forth in *Grady,* it would be illogical to conclude on this evidence that Cornell conducted a national search, hired plaintiff for three years, and renewed his appointment, only to deny his tenure for discriminatory reasons.

Moreover, plaintiff fails to allege or show that the tenure review he received

*outside* the Department was discriminatory; coupled with plaintiff's failure to come forward with evidence that the Department's recommendation to deny him tenure was based on discriminatory reasons, he has utterly failed to carry his burden under the *McDonnell Douglas* framework.

## CONCLUSION

Plaintiff fails to make out a prima facie case of tenure discrimination. Alternatively, even if plaintiff's proof was sufficient to make out a prima facie case, he fails to come forward with sufficient evidence that his tenure denial was motivated by discrimination. His claims of discrimination consequently fail. Cornell's motion for summary judgment is GRANTED; the Court dismisses plaintiff's action, and instructs the Clerk of the Court to enter judgment in accordance herewith.

IT IS SO ORDERED.